## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA** | * |
| | * No. 5:21-CR-156 |
| | * |
| vs. | * |
| | * |
| **JOSEPH WHITBECK,** | * |
| Defendant | * |

# AMENDED DEFENDANT'S SENTENCING MEMORANDUM

## 1. INTRODUCTION

On April 13, 2021, a grand jury sitting in the Eastern District of Pennsylvania returned a 20-count Indictment charging Defendant, Joseph Whitbeck, with honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Counts 1-10), and wire fraud, in violation of 18 U.S.C. § 1343 (Counts 11-20).

On November 3, 2021, Mr. Whitbeck pled guilty to Counts 1-20 of the Indictment.

## 2. STATUTORY MAXIMUM SENTENCES AND SENTENCING GUIDELINES

The Court may impose the following Statutory Maximum Sentence:

The maximum term of imprisonment is 20 years per count. The Court may impose a term of supervised release of not more than 3 years per count. The maximum fine is $250,000.00 per count. The total offense level is an 18. The Criminal History Category is a 1, and the guideline imprisonment range is 27 months to 33 months.

## 3. FEDERAL SENTENCING GUIDELINES-POST BOOKER SENTENCING IN THE THIRD CIRCUIT

A. **Courts Must Impose Sentence in Consideration of the Relevant Section 3553(a) Factors "Regardless Whether [the Sentence] Varies from the Sentence Calculated under the Guidelines"**

As revised by United States v. Booker, 543 U.S. 220, 245-46 (2005), the Sentencing Reform Act "requires a sentencing court to consider [advisory] Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." This means that a district court's primary obligation is to choose a sentence in light of all the statutory sentencing factors (including the advisory guideline range) in the context of a defendant's particular case, and that sentence may or may not be imposed about the guideline range.  See United States v. Coleman, 451 F.3d 154, 158 (3d Cir. 2006) ("the Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in § 3553(a)").

In the Third Circuit, district courts "follow a three-step sentencing process." United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. . . .
(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force. . . .
(3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors . . . in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

Id. (internal quotations and citations omitted; emphasis added). Thus, in the critical third Gunter step, the district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, whether or not that judgment results in a sentence within the advisory range. See also United States v.

Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006) (district court must give "meaningful consideration to the section 3553(a) factors" and impose sentence for reasons that are logical and consistent with those factors, but rejecting presumption that sentence should be imposed within guideline range).

Moreover, as the Court explained in Gunter, section 3553(a) "begins with the broad mandate that sentencing courts 'shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes'" of sentencing set out in the statute. 462 F.3d at 243 n.9. This broad mandate applies to the consideration of all of the section 3553(a) factors, and it necessarily takes precedence over the advisory guideline range and other individual factors.

A district court commits error if, in applying the third Gunter step, it believes that it is bound by any aspect of the sentencing guidelines. This aspect of post-Booker Third Circuit law was illustrated clearly in Gunter, 462 F.3d 237. There the defendant's guideline range was based on his offense for possession with intent to distribute cocaine base ("crack" cocaine). The guidelines for crack cocaine are subject to the 100-to-1 crack versus powder cocaine differential, meaning that the defendant's advisory guideline range was significantly higher than had his offense involved powder cocaine. Id. at 238. At sentencing, the defense asked the district court to consider the unwarranted nature of that differential in imposing sentence. The district court refused to do so, concluding that it was not at liberty to reconsider Congress' intent in establishing and maintaining the differential. Id. 239. The Third Circuit remanded, because the district court's refusal to consider the differential merely as advisory in the third step of the sentencing process amounted

to treating the guidelines as mandatory. Id. at 247-48; see also Cooper, 437 F.3d at 330-31 (rejecting notion that guideline sentence is presumptively correct as "com[ing] close to restoring the mandatory nature of the guidelines").

Accordingly, district courts now have much greater discretion in sentencing than was previously afforded, and the Third Circuit has spoken firmly in support of this discretion. The courts should exercise their sentencing discretion to further the directives and purposes of 18 U.S.C. § 3553, which are set forth and applied to [the defendant's] case in the next sections.

## 4. THE DIRECTIVE AND FACTORS EMBODIED IN SECTION 3553(a)

The primary directive in section 3553(a), as noted above, is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2," which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) (2).

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a) (1);

(2) the kinds of sentences available, the advisory guideline range and pertinent guideline policy statements, § 3553(a) (3)-(5);

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a) (6);

(4) the need to provide restitution to any victims of the offense, § 3553(a) (7).

This is not an exhaustive list of the factors the Court can consider, as "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (emphasis added).

## 5. APPLICATION OF THE STATUTORY FACTORS OF THIS CASE

Mr. Whitbeck was born on September 25, 1964, in Port Jefferson, Long Island, New York.

Mr. Whitbeck has three siblings who reside in Long Island in the state of New York.

Mr. Whitbeck was married in 1991.

Mr. Whitbeck has two children, Anna Adele Whitbeck is 22 years of age and Julie Angeline Whitbeck is 19 years of age.

Mr. Whitbeck's wife and daughters have been supportive of him.

Mr. Whitbeck graduated from Newfield High School, in Selden New York, in 1982 and went to Suffolk County Community College, Selden, New York for one year and did not obtain a degree.

Mr. Whitbeck is currently employed at the Hershey Company, in Hazel Township, Pennsylvania as a receiver and material handler.

Mr. Whitbeck was previously employed by the U.S. Postal Service from January 1987 to August 30, 2021, at which time he retired.

Mr. Whitbeck has admitted to his involvement in the kickback scheme involving the U.S. Postal Service grievance payment system from 2006 through the spring of 2019. Mr. Whitbeck is remorseful as a result of his involvement in the kickback scheme.

In 1995, Mr. Whitbeck was elected the Vice President of Branch 274, which covers the Allentown Post Office and the surrounding offices. He served in this position until 2018. In 2010, Mr. Whitbeck and the branch's President, William Sherman, had worked out an agreement whereby Mr. Whitbeck would handle almost all matters related to the Allentown Post Office, and Mr. Sherman would handle union matters for the outlying offices.

The Allentown Post Office has approximately 170 letter carriers. These carriers can elect to work a regular 8-hour day or sign up for two overtime lists; the 10-hour list or the 12-hour list. The Postal Carriers are paid overtime rates for any overtime hours that they work. The postal managers are supposed to select postal carriers who are on the 10 or 12-hour lists for overtime work. If they do not, and instead force carriers on the 8-hour list to work overtime, the office's union officials can file grievances on behalf of the carriers who did not receive the overtime work for which they had signed up.

Grievances that are filed on behalf of multiple carriers are referred to as a class-action grievance. Individuals that were responsible for submitting those grievances were Mr. Whitbeck and the shop stewards that reported to him.

Mr. Whitbeck and the shop stewards prepared the grievances and they met with one of the managers at the Allentown Post Office and attempted to settle the claims. When a settlement was reached, both sides initialed the grievances. The settled grievance was then given to Mr. Whitbeck so that he could decide who would be paid. Mr. Whitbeck prepared a settlement sheet that specified who should be paid in connection with a grievance. The

settlement sheets would then be signed by the representative of the union and U.S. Postal Service management, who processed them for payment.

Mr. Whitbeck admits that he would receive kickbacks of approximately $100 for every $400 in extra grievance payments that he obtained for the participating letter carriers.

It should be noted that no other individuals were charged in this case.

It should also be noted that Mr. Whitbeck was a hard working diligent vice president of branch of 274. He worked very hard in the grievance process for his constituents. Although he admittedly received kickbacks, he received large amounts of grievance payments for his postal carriers. The amounts of grievance payments he received for his postal carriers was one of the largest in the nation. So, despite the kickbacks, his hard work in filing grievances resulted in his postal carriers receiving many well deserved grievance payments

## 6. CONCLUSION

For the foregoing reasons, Mr. Whitbeck respectfully requests that his Honorable Court sentence in a fair and appropriate manner

                                    Respectfully Submitted,
                                    HUBER WALDRON & WILLIAMS, LLP

Dated: 4|6|2022                BY:  /s/John J. Waldron, Esquire
                                    Attorney I.D. No. 36853
                                    535 Hamilton Street, Suite 102
                                    Allentown, PA 18101
                                    610-435-9790

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA** | * |
| | * **No. 5:21-CR-156-EGS** |
| **vs.** | * |
| | * |
| **JOSEPH WHITBECK,** | * |
| **Defendant** | * |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Defendant's Sentencing

Memorandum was served by electronic filing and email address as follows"

The Honorable Edward G. Smith
101 Larry Holmes Dr., 4th Floor
Easton, PA 18042

AUSA Patrick J. Murray, Esquire
615 Chestnut Street, Suite 1210
Philadelphia, PA 19106

Dated: 4|6|2022

BY: /s/ John J. Waldron, Esquire